Stanley KAHN, Petitioner–Appellant,

v.

Rachel CUNDIFF and Larry Cundiff, Defendants–Appellees.

No. 32A01–8803–CV–74.

Court of Appeals of Indiana, First District.

Jan. 23, 1989.

Ronald E. Elberger, Bose McKinney & Evans, Indianapolis, for petitioner-appellant.

Reginald B. Bishop, Roberts & Bishop, Indianapolis, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Stanley Kahn appeals from the Hendricks Circuit Court's award of attorney fees to Larry Cundiff under Indiana Code section 34–1–32–1. We affirm in part, reverse in part, and remand.

## FACTS

On September 19, 1985, Rachel Cundiff was driving a vehicle on the inner north bound lane of Interstate 65. The vehicle was owned by her husband, Larry Cundiff. As Rachel proceeded around a curve in the interstate she was forced to swerve to avoid a vehicle that was stopped in the inner north bound lane. However, Rachel sideswiped this vehicle. Paulette Brown

and Terry Willis, passengers in the stopped car, incurred injuries as a result of the collision.

On December 1, 1986, attorney Stanley Kahn filed a complaint on behalf of Brown and Willis against Rachel and Larry Cundiff. The complaint alleged that Rachel negligently operated a vehicle owned by Larry and caused injury to Brown and Willis. On the same day, Stanley Kahn also filed a request for admissions, a request for production of documents, and interrogatories. The Cundiffs filed several motions for enlargement of time to respond to plaintiffs' discovery requests, as well as two (2) motions to dismiss and a motion for judgment on the pleadings for failure to state a claim against Larry. The Cundiffs also filed a motion for change of venue.

On March 31, 1987, the Marion County Superior Court granted the Cundiffs' motion for change of venue and transferred the case to the Hendricks Circuit Court. On April 13, 1987, the Hendricks Circuit Court set a pre-trial conference date of May 27, 1987, and set a date for trial. On April 25, 1987, the Cundiffs responded to the plaintiff's request for admissions and request for production of documents. On April 30, 1987, the plaintiffs filed their pre-pre-trial entry which stated that the plaintiffs intended to pursue a negligent entrustment theory against Larry, depending upon the outcome of discovery. On May 27, 1987, the Cundiffs responded to this entry and alleged that the pleadings and discovery did not support a negligent entrustment theory against Larry. On June 9, 1987, the trial court denied all pending motions and set a June 16, 1987, trial date. On June 10, 1987, Larry filed a request for a ruling on his motions to dismiss and his motion for judgment on the pleadings. The trial court apparently denied Larry's renewed request.

On June 16, 1987, prior to the selection of the jury, plaintiffs' counsel, Stanley Kahn, admitted he had no facts to support a negligent entrustment theory against Larry, and accordingly the trial court dismissed Larry from the case. Thereafter, Larry filed a request for attorney fees pursuant to Indiana Code section 34–1–32–1. A trial was held as to Rachel. The jury held in favor of Rachel and against the plaintiffs based upon plaintiffs' comparative fault. On August 19, 1987, a hearing was held on Larry's request for attorney fees. Thereafter, the trial court took the matter under advisement and briefs and affidavits were submitted by both parties. On October 21, 1987, the trial court granted Larry's request for attorney fees and ordered Stanley Kahn to pay Larry Cundiff $8,246.65 in attorney fees and $411.11 for jury costs. Kahn appeals the trial court's award of attorney fees.

## ISSUES

While Kahn presents three (3) issues on appeal, we rephrase and consolidate them into the following two (2) issues:

1. Whether the trial court's making of findings which were irrelevant to its conclusion that Kahn filed and continued a frivolous, unreasonable, or groundless action against Larry requires reversal?

2. Whether the trial court erred by awarding attorney fees under Indiana Code section 34–1–32–1?

## DISCUSSION AND DECISION

*Issue One*

■ Kahn argues that the trial court's findings of fact which referred to occurrences, (1) at a deposition, (2) at the trial, and (3) during settlement discussions were clearly erroneous and require reversal. We disagree. Regardless of whether these findings were clearly erroneous, they were irrelevant to the trial court's legal conclusion that Kahn's claim against Larry was frivolous, unreasonable or groundless which provided the basis for the attorney fee award. Accordingly, we hold that this issue presents harmless error and does not necessitate reversal.

*Issue Two*

Kahn challenges next the trial court's award of attorney fees under Indiana Code section 34–1–32–1. In reviewing a trial court's decision to award attorney fees un-

der this statute we are presented with mixed questions of fact and law. *Stoll v. Adriansen* (1984), 122 Wis.2d 503, 513, 362 N.W.2d 182, 187. Accordingly, we use several standards of review to determine the propriety of the attorney fee award. *See e.g., Flip Side Productions Inc. v. Jam Productions Ltd.* (7th Cir.1988), 843 F.2d 1024, 1036; *Brown v. Federation of State Medical Boards of U.S.* (7th Cir.1987), 830 F.2d 1429, 1434 (cases applying multi-tiered standard to attorney fee awards under Federal Rule of Civil Procedure, Rule 11). *See also,* 2A Moore's Federal Practice ¶ 11.02[4] (1987). Initially, we review the trial court's findings of fact under the clearly erroneous standard. We then review *de novo* the trial court's legal conclusion that a party either (1) brought an action or defense on a claim or defense that is frivolous, unreasonable or groundless, or (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable or groundless, or (3) litigated the action in bad faith. Finally, we review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard. *See e.g., Flip Side,* 843 F.2d at 1036; *Brown,* 830 F.2d at 1434; *Stoll,* 122 Wis.2d at 513, 362 N.W.2d at 186.

In the present case, the trial court's decision to award attorney fees was accompanied by an extensive memorandum. The following statements are the only portions of the memorandum that are pertinent to our decision:

"The lawsuit against Larry Cundiff filed December 1st, 1986, did not set out anything Stanley Kahn alleged that Larry Cundiff had done wrong and in fact at no time during this entire lawsuit was Stanley Kahn ever able to produce any evidence that Larry Cundiff should be a party to this lawsuit.

"Throughout this lawsuit and jury trial, and even today, Stanley Kahn contends that it was proper to have Larry Cundiff in this lawsuit. No fact was ever produced by Stanley Kahn during the entire proceedings in the case which would warrant or justify Larry Cundiff

to remain a civil defendant in this jury trial case....

"On the morning before the trial, before the jury was selected and after all discovery was complete in the case, Stanley Kahn moved to dismiss Larry Cundiff from the lawsuit. In other words, Stanley Kahn had sued Larry Cundiff, required him to remain in this lawsuit until the very morning of trial, and then tried to take him out of the case when Stanley Kahn knew he had no case against Larry Cundiff but had required him to remain a defendant until the morning of the trial....

"The court finds that Stanley Kahn, on December 1st, 1986, signed and filed a lawsuit against Larry Cundiff which was groundless and unreasonable, and continued to litigate the case against Larry Cundiff after his claim became clearly frivolous, unreasonable, and groundless, in violation of Indiana Law and Trial Rule 11. The court finds that there was no good ground to support continued litigation against Larry Cundiff and that costs should be assessed."

Record at 272–73, 276–77. The foregoing statements contain both a factual finding as to the facts and law Kahn had in support of a claim against Larry, and a legal conclusion as to whether Kahn had filed and continued a frivolous, unreasonable, or groundless claim against Larry. We review the trial court's factual finding that Kahn had no facts and law to support a claim against Larry under the clearly erroneous standard. Furthermore, we review the trial court's legal conclusion that Kahn filed and continued a frivolous, unreasonable, or groundless action against Larry under a *de novo* standard.

Kahn argues that the trial court's factual findings are clearly erroneous as evidence was presented which contained facts and law sufficient to support a claim against Larry. Specifically, Kahn refers to the affidavits of Kahn and Jim Bemis which indicate that a prefiling investigation was conducted. This investigation allegedly revealed that (1) Larry was the owner of the vehicle driven by Rachel, (2) Larry had entrusted the vehicle to Rachel, and (3)

Rachel had a correctable vision problem. The affidavits also indicated that Bemis interviewed eyewitnesses, and that the plaintiffs told Bemis that when Rachel returned to the scene of the accident she appeared dazed and incoherent, although not injured, and they suspected that she was intoxicated, medicated, or suffering from an illness. Kahn argues that the facts revealed in these affidavits supported a claim against Larry under either a negligent entrustment or a vicarious liability theory.

In reviewing under the clearly erroneous standard we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Chase Manhattan Bank v. Lake Tire Co., Inc.* (1986), Ind.App., 496 N.E.2d 129, 131. Furthermore, in examining the findings of fact we neither reweigh the evidence nor judge witness credibility; rather, we view only that evidence and the reasonable inferences to be drawn therefrom which support the trial court's findings and decision. *Baker v. Compton* (1983), Ind.App., 455 N.E.2d 382, 385–86. In the present case, Kahn's argument and reference to the affidavits amounts to no more than a request that we reweigh the evidence and judge credibility. This we cannot do.

■ Kahn apparently filed suit against Larry based upon either a negligent entrustment or vicarious liability claim. To establish a negligent entrustment claim against an owner of a vehicle a plaintiff must have facts showing that the owner entrusted the vehicle to a driver with knowledge that the driver was incompetent to drive the vehicle. *Stocker v. Cataldi* (1986), Ind.App., 489 N.E.2d 144, 145, *trans. denied.* To establish a vicarious liability claim against an owner of a vehicle the plaintiff must at the very least show some type of a principal/agent or master/servant relationship. *Wimp v. Anthis* (1979), Ind.App., 396 N.E.2d 918, 920. In the present case, the trial court determined that the evidence did not present a sufficient factual basis to support either of these theories. We cannot hold that this determination was clearly erroneous.

■ The statements in the affidavit regarding eyewitness interviews may have provided some factual basis for showing that Rachel was incompetent to operate the vehicle. However, the record indicates that the non-plaintiff eyewitnesses testified they gave no statements. Also, the plaintiffs never testified that Rachel appeared intoxicated or incompetent to drive. Furthermore, Kahn never presented the alleged witness interviews, or statements from these witnesses into evidence. We note also that the Indiana State Trooper who responded to the accident did not arrest Rachel, but rather drove her home because her vehicle was disabled and towed for repair. Thus, the trial court acted within the scope of its fact finding function in apparently rejecting these statements which referred to the alleged eyewitness interviews. Furthermore, although evidence that Rachel was driving at the time of the accident with an uncorrected vision problem may have established that she was incompetent to operate the vehicle, the statement in the affidavit which merely showed that Rachel had a correctable vision impairment does not. Finally, the statements in the affidavits showing ownership and entrustment of a vehicle, without evidence that Rachel was incompetent and that Larry knew of this incompetence, will not provide a reasonable basis for a negligent entrustment claim. Furthermore, no facts were ever presented to show an agency relationship that would support a vicarious liability claim against Larry. Therefore, the trial court's factual finding that Kahn did not have a factual basis to support a claim against Larry is not clearly erroneous.

Under the second step of our review we must determine under a *de novo* standard whether Kahn's filing and continuing of the suit without a reasonable factual basis to support a claim against Larry constituted conduct that would permit the trial court to award attorney fees as costs under Indiana Code section 34–1–32–1, which provides as follows:

"Costs—Attorney's fees.—(a) In all civil actions, the party recovering judg-

ment shall recover costs, except in those cases in which a different provision is made by law.

"(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:

(1) Brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) Continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) Litigated the action in bad faith.

"(c) The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts, but the prevailing party may not recover the same attorney's fees twice."

Larry argues that this statute provides an enforcement mechanism for the filing requirements found in Indiana Rules of Procedure, Trial Rule 11.[1] Larry argues further that Indiana Code section 34–1–32–1 is a codification of the penalty provisions of Federal Rule of Civil Procedure, Rule 11.[2]

We agree with Larry that this statute provides an enforcement mechanism against improper and unwarranted litigation. However, we do not agree that the statute is a codification of Federal Rule 11's penalty provisions, even though both Federal Rule 11 and the statute have similar purposes and provide for a court ordered award of attorney fees. Therefore, although the tests used to define a Federal Rule 11 violation may be helpful, they are not determinative of our review of the propriety of an award of attorney fees under I.C. § 34–1–32–1.

---

1. "(A) Parties represented by attorney. Every pleading or motion of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address, and telephone number shall be stated, except that this provision shall not apply to pleadings and motions made and transcribed at the trial or a hearing before the judge and received by him in such form. A party who is not represented by an attorney shall sign his pleading and state his address. Except when specifically required by rule, pleadings or motions need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two [2] witnesses or of one [1] witness sustained by corroborating circumstances is abolished. The signature of an attorney constitutes a certificate by him that he has read the pleadings; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay. If a pleading or motion is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted."

2. Federal Rule of Civil Procedure, Rule 11 provides in part, as follows:

"Signing of Pleadings, Motions, and Other Papers; Sanctions

"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individ-

ual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

The first issue we must address in determining the propriety of an award under this statute involves the interpretation of the terms "frivolous, unreasonable or groundless". In interpreting and applying these terms as well as the whole of section (b) we must keep in mind that this portion of the statute is in derogation of the common law rule that a prevailing party generally cannot be awarded attorney fees. Furthermore, we must be mindful of the probability that an award of attorney fees is likely to deter the bringing of suits and have a chilling effect on a party's access to the courts. However, we also must interpret and apply this statute in a manner which carries out the legislative purpose which is to deter frivolous, unreasonable, groundless and bad faith litigation. Thus, we must balance the attorney's duty to zealously represent his clients within the bounds of the law against the important policy of discouraging unnecessary and unwarranted litigation.

■ Kahn argues that Rule 3.1 of the Indiana Rules of Professional Conduct and the comments thereto provide a potential definition for the term "frivolous". Rule 3.1 provides in part as follows:

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

The comments to this rule provide in part as follows:

"The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop final evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable to make a good faith argument on the

merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

We agree with Kahn. We note also that the definition for frivolous found in our rules of professional conduct is similar to the definition given to the term "frivolous" as it is found in Colorado's attorney fee cost statute. See, *Western United Realty, Inc. v. Isaacs* (1984), Colo., 679 P.2d 1063, 1069; *Merrill Chadwick Co. v. October Oil Co.* (1986), Colo.App., 725 P.2d 17, 19. In *Isaacs*, the Colorado Supreme Court held that a claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense. *Isaacs*, 679 P.2d at 1069. However, the court went on to state that a claim or defense is not frivolous merely because a meritorious action proved unsuccessful or where a legitimate attempt has been made to establish a new theory of law or where a good faith effort is made to extend, modify, or reverse existing law. *Id.* Therefore, we hold that a claim or defense is "frivolous" (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

■ Kahn also provides an argument for the definition of the term "unreasonable". Under this argument Kahn relies on *Wong v. Tabor* (1981), Ind.App., 422 N.E.2d 1279. In *Wong*, the Indiana Court of Appeals, in deciding an appeal from a suit for malicious prosecution, developed a two (2) part test for determining probable cause which measures the subjective and objective reasonableness of an attorney's conduct. *Wong*, 422 N.E.2d at 1288. Thus, Kahn suggests that if an attorney has probable cause to file a claim or defense then the attorney's conduct should not be found unreasonable. We agree. Therefore, we hold that a claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known

at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified.[3]

We next must determine a definition or standard for the term "groundless". Although neither party presents an argument with regard to this term, Colorado has addressed the meaning and application of this term within the context of its attorney fee cost statute. *See Isaacs*, 679 P.2d at 1069. In *Isaacs*, the Colorado Supreme Court held that a claim or defense is groundless if the allegations of the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *Id.* However, as further explained in *Isaacs*, an action is neither groundless nor frivolous merely because a party loses on the merits. *Id.* Therefore, we hold that a claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party.

Next, we must determine based on this statute and the foregoing definitions whether the facts of the present case merited an award of attorney fees. Kahn appears to argue that this statute codifies the obdurate behavior exception which provides that a court may award attorney fees if a party has filed or continued a knowingly baseless claim and the trial court determines that such conduct was "vexatious and oppressive in the extreme and a blatant abuse of the judicial process". *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, 505. Thus, Kahn argues that since the trial court did not find an improper motive, attorney fees were improperly awarded. Kahn is mistaken. The only wording in the statute which hints at such a requirement is found in subsection (b)(3), which allows the court to award attorney fees if a party

"litigated the action in bad faith". Nothing in subsections (b)(1) or (b)(2) indicates that a court must find an improper motive to award attorney fees. Rather, these subsections clearly contemplate an examination of the legal and factual basis of a claim and the arguments advanced in support thereof. *See* Hull, *Attorney's Fees for Frivolous, Unreasonable, or Groundless Litigation*, 20 Ind.L.Rev. 151, 156 (1987). Although under our definition of frivolous a trial court may award attorney fees based on the client's motive, a finding of frivolousness and an award of attorney fees may be based solely upon the lack of a good faith and rational argument in support of the claim. Therefore, the trial court was not required to find an improper motive to award attorney fees under subsections (b)(1) or (b)(2).

In the present case, based on the trial court's finding that Kahn had no facts to support a claim against Larry we must agree with the trial court's legal conclusion that Kahn's claim was frivolous, unreasonable or groundless. Kahn attempted to make an argument in support of the claim based upon the statements in the affidavits under theories of negligent entrustment and vicarious liability. However, since we previously held that the trial court properly rejected some of the statements in this affidavit and found no facts supported either legal theory, we cannot say that Kahn's argument was in good faith or rational. Thus, Kahn's claim against Larry was frivolous. Furthermore, given the totality of the circumstances Kahn's claim against Larry was also unreasonable. The facts and legal theories were not complex. Kahn did not have to rely on his clients to obtain a factual foundation. Also, although discovery would have been beneficial as to the facts surrounding Larry's involvement or liability, plenty of time ex-

---

**3.** We note that in examining the circumstances surrounding an attorney's conduct the court should consider: (a) the amount of time the attorney had to investigate the facts, research the law, and prepare the document; (b) the extent to which the attorney had to rely upon the client for the factual foundation; (c) the complexity of the factual basis and legal questions involved; (d) the ability to conduct a pre-filing investigation, and the extent to which discovery was necessary and beneficial to the development of the factual basis; and (e) the plausability of the arguments forwarded, including good faith efforts to extend or modify the law. *See e.g., Brown v. Federation of State Medical Boards of U.S.* (7th Cir.1987), 830 F.2d 1429, 1435; *Wong v. Tabor* (1981), Ind.App., 422 N.E.2d 1279, 1288 n. 9.

isted between the time suit was filed against Rachel and the time the statute of limitations ended. Thus, Larry could have been added as a defendant after initial discovery, assuming the facts discovered so warranted. Finally, the arguments forwarded by Kahn based on Larry's ownership and entrustment were not plausible absent evidence that Rachel was incompetent or that Larry knew of Rachel's incompetence. Also, no argument was made to change the law. Accordingly, we do not believe that any reasonable attorney would consider the claim worthy of litigation or justified. Finally, the lack of a factual basis makes Kahn's claim against Larry groundless. Therefore, the trial court could have awarded attorney fees under I.C. § 34-1-32-1.

The last step of our review examines whether the trial court abused its discretion with regard to the amount of fees awarded. Under this section of our review Kahn argues that the trial court abused its discretion as to the amount of attorney fees awarded by taking judicial notice of and by miscalculating the amount of reasonable attorney fees. We agree. The trial court in the present case took judicial notice of reasonable attorney fees relying on *In re Lockyear* (1974), 261 Ind. 448, 305 N.E.2d 440. However, the rule in *Lockyear* which permits the trial court to take judicial notice of reasonable attorney fees is limited to routine cases involving relatively small amounts. *Zebrowski and Assoc. v. City of Indianapolis* (1983), Ind. App., 457 N.E.2d 259, 264 (Ratliff, J., dissenting); *Berkemeier v. Rushville Nat'l Bank* (1982), Ind.App., 438 N.E.2d 1054, 1058. The present case, however, is not a routine case involving a relatively small amount. Thus, the trial court improperly took judicial notice of reasonable attorney fees. Larry argues, however, that his affidavits in support of attorney fees were sufficient evidence to support the award. We disagree. The amounts stated in the affidavits conflict and do not indicate whether the time expended was for Larry, Rachel, or both. The first affidavit speaks in terms which would indicate the time was spent exclusively on Larry's defense, while the second affidavit suggests the time was spent defending both Larry and Rachel. Furthermore, the second affidavit indicates that thirty-two (32) hours were spent in court in defense of Larry. However, the affidavit does not indicate whether this figure includes court time in which Rachel was the only remaining defendant. If it does reflect such time, the amount would be unreasonable. Thus, the trial court improperly took judicial notice of reasonable attorney fees and the affidavits failed to provide a proper basis for the award. Therefore, we reverse the trial court's award of attorney fees with regard to the amount, and remand for a hearing as to reasonable attorney fees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Costs to be assessed one half against Appellant and one half against Appellees.

SHIELDS, P.J., and NEAL, J., concur.