Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Oct 31 2013, 5:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**BRYAN L. CIYOU**
**LORI S. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**R. PATRICK MAGRATH**
Alcorn, Goering & Sage, LLP.
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF CUSTODY OF: | ) | |
| | ) | |
| L.T. and A.B, minor children, | ) | |
| | ) | |
| R.L. and P.L., | ) | |
| | ) | |
| Appellants-Petitioners, | ) | No. 39A05-1305-MI-235 |
| | ) | |
| vs. | ) | |
| | ) | |
| A.B. and R.B., | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Sally A. Blankenship, Special Judge
Cause Nos. 39C01-1211-MI-1033

**October 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

R.L. and P.L. ("Grandparents") appeal the Jefferson Circuit Court's order dismissing Grandparents' petition to modify custody of L.T. and A.J.B. ("the Children") under principles of res judicata. Grandparents present the sole issue of whether the trial court erred in concluding that res judicata bars their petition.

## Facts and Procedural History

The Children's mother, A.B. ("Mother"), is the granddaughter of Grandparents. Eight-year-old L.T.'s biological father is not involved in L.T.'s upbringing. On May 18, 2006, Mother married R.B. and gave birth to A.J.B. approximately three months later. R.B. ("Father") is A.J.B.'s biological father. A.J.B. was diagnosed with Downs Syndrome. He is now six years old.

In 2006, just before A.J.B. was born, Mother and Father, who live in Virginia, sent seventeen-month-old L.T. to live with Grandparents in Indiana for a period of one to four months. Mother and Father were struggling financially and were having difficulty providing for the child. Approximately eight months later, Mother and Father again sent L.T. and eight-month-old A.J.B. to live with Grandparents for a period of four to five months. In September 2007, the Children were once more sent to live with Grandparents. Two months later, in November 2007, Mother and Father consented to Grandparents' legal guardianship of the Children so that Grandparents could obtain medical insurance benefits for the Children.

Four years later, on November 9, 2011, Mother and Father filed a petition to terminate Grandparents' guardianship. On July 31, 2012, over Grandparents' objection, and after a two-day hearing, the trial court terminated the guardianship. Grandparents

2

appealed and another panel of this court affirmed the trial court's order, holding that Grandparents had not "overcome the 'important and strong presumption' that a child's best interests are best served by placement with his or her natural parent" because Grandparents failed to prove by clear and convincing evidence that "the child's best interests are 'substantially and significantly' served by the third-party placement." In re Guardianship of L.R.T., 979 N.E.2d 688, 690 (Ind. Ct. App. 2012) trans. denied (quoting In re K.I., 903 N.E.2d 453, 459 (Ind. 2009)).[1] On February 28, 2013, the Indiana Supreme Court denied Grandparents' request for transfer. L.R.T. v. A.B., 983 N.E.2d 1157 (Ind. 2013).

On November 7, 2012, a month before this court issued its opinion reviewing the trial court's termination of Grandparents' guardianship of the Children, Grandparents filed a petition to "Establish/Modify Custody in the Person of De Facto Custodians" under a new cause number. On March 14, 2013, after this court had issued its opinion and our supreme court denied transfer, Mother and Father filed a motion to dismiss Grandparents' petition, arguing that Grandparents were seeking to re-litigate the trial

---

[1] This court concluded that

> [t]he parties agree that the reason for the Children's placement with Guardians was Mother's and Father's lack of stable housing and employment. After hearing evidence of current conditions, the trial court found that Father was employed in a factory making $16.63 per hour and Mother was employed at Subway, they had decided to buy a house that would provide suitable family accommodations, and Mother had made inquiries to address A.J.B.'s special educational needs. The trial court found that both Children could be expected to make the necessary adjustments. Guardians' strenuous argument that Mother and Father have shown instability in the past and likely cannot adequately address A.J.B.'s special needs in the present is an invitation to reweigh the evidence. This Court is prohibited from reweighing the evidence. Accordingly, we decline to do so.

Guardianship of L.R.T., 979 N.E.2d at 691 (internal citation omitted).

3

court's prior order terminating their guardianship and that the petition was barred by principles of res judicata. Specifically, Mother and Father noted that in the prior guardianship case, "[Grandparents] argued to [the Indiana Court of Appeals and the Indiana Supreme Court] that they were the de facto custodians" and "[t]he Court of Appeals included a review of the de facto custodian statute [in its] Opinion affirming the trial court's Termination of the Guardianship." Appellant's App. p. 54. Mother and Father further emphasized that "[t]he Court of Appeal[s] specifically held that [the] legal standard governing the burden of proof required to be met by any third party seeking custody of a child is identical in guardianship and de facto custody proceedings." Id.

The trial court, by a special judge, held a hearing on Mother and Father's motion to dismiss on April 9, 2013. On May 13, 2013, the trial court issued an order granting the motion to dismiss. The trial court's order provided, in part:

> 5. The Court of Appeals in its opinion as to the custody of L.R.T. and A.J.B., did discuss the status of [Grandparents] as de facto custodians and the standard of change of custody as it related to a de facto custodian as contemplated in I.C. §31-14-13-2.5.
>
> 6. The Court finds based on the foregoing that this matter has been litigated and Res Judicata applies and that further review or further request for modification cannot be initiated in a new cause of action.

Appellant's App. pp. 7-8.

Grandparents now appeal.

**Discussion and Decision**

Indiana Trial Rule 12(B)(6) tests the legal sufficiency of a claim, rather than the facts supporting it. City of South Bend v. Century Indem. Co., 821 N.E.2d 5, 9 (Ind. Ct.

4

App. 2005), trans. denied. We review a trial court's grant or denial of a Trial Rule 12(B)(6) motion to dismiss de novo, viewing the complaint in the light most favorable to the non-moving party and drawing every reasonable inference in favor of that party. Town of Plainfield v. Town of Avon, 757 N.E.2d 705, 710 (Ind. Ct. App. 2001), trans. denied. We must stand in the trial court's shoes, looking only at the complaint itself, and determine whether the trial court erred when it applied the law. City of South Bend, 821 N.E.2d at 9; D.L. v. Huck, 978 N.E.2d 429, 432-33 (Ind. Ct. App. 2012), aff'd on reh'g. Where it is clear that the facts alleged in the complaint are insufficient to support relief under any set of circumstances, the trial court's grant of the motion to dismiss is proper. D.L., 978 N.E.2d at 432.

Res judicata prevents the repetitious litigation of disputes that are essentially the same where a final judgment has been rendered on the merits by a court of competent jurisdiction. See Matter of Sheaffer, 655 N.E.2d 1214, 1217 (Ind. 1995); French v. French, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005). The principles of res judicata are divided into two branches: claim preclusion and issue preclusion, the latter also referred to as collateral estoppel. French, 821 N.E.2d at 896. Collateral estoppel bars the subsequent re-litigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. In re L.B., 889 N.E.2d 326, 333 (Ind. Ct. App. 2008). "[I]t has long been the case that res judicata 'embraces not only what was actually determined, but every matter which the parties could have had litigated in the cause. The judgment in the former case is conclusive and bars a subsequent action if an opportunity was presented to litigate the

5

entire subject matter in the first action.'" Finke v. N. Ind. Pub. Serv. Co., 899 N.E.2d 5, 10 (Ind. Ct. App. 2008) (quoting Smith v. Lake County, 863 N.E.2d 464, 470 (Ind. Ct. App. 2007)).

In their prior appeal, Grandparents argued that they were de facto custodians of the Children and that, as such, "'there would be no burden of proof as with an initial custody determination or Mother and Father/Step–Father would have to prove a substantial change in circumstances to have custody modified back to them.'" Guardianship of L.R.T., 979 N.E.2d at 689-90 (quoting Appellants' Br. at 27). After examining Indiana's de facto custodian statute and relevant case law, this court affirmed the trial court's order, emphasizing that

> although the party seeking a change of custody must persuade the trial court that modification is in the best interests of the child and there is a substantial change in one of the afore-mentioned statutory factors, "these are modest requirements where the party seeking to modify custody is the natural parent of a child who is in the custody of a third party." The "parent comes to the table with a strong presumption" and the burden imposed by the statutory requirements is "minimal." When the parent meets this "minimal burden," the third party must prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another person. If the third party carries the burden, custody of the child remains in the third party. "Otherwise, custody must be modified in favor of the child's natural parent."

Id. at 691 (quoting In re K.I., 903 N.E.2d 453, 459, 461-62 (Ind. 2009) (internal citations omitted).

Grandparents argue that the doctrine of res judicata does not bar their petition because "[t]he previous matter involving the parties was a termination of guardianship proceeding, and [Grandparents] were never adjudicated de facto custodians, and never

6

motioned for custody of the Children." Appellant's Br. at 7. They assert, "[s]imply because [Grandparents] argued on appeal that the guardianship trial court erred in failing to give deference to the de facto custody statutes, does not mean that the issue of if [Grandparents] are de facto custodians was actually litigated and determined." Appellant's Br. at 7-8.

We disagree. This court previously affirmed the trial court's determination in the guardianship proceeding that Grandparents failed to overcome the presumption in favor of Mother and Father, the natural parents. In doing so, we noted that the apparent purpose of the de facto custodian statute is not to weaken the presumption in favor of the natural parent, but, rather, to ensure that a third party seeking custody of a child has standing to do so. Guardianship of L.R.T., 979 N.E.2d at 690. Indeed, the strong presumption in favor of natural parents applies as a threshold issue whether the case is a guardianship case or a de facto custodian case. See In re Guardianship of L.L., 745 N.E.2d 222, 230 (Ind. Ct. App. 2001). In both types of proceedings, the "nonparent seeking to retain custody must bear the burden of overcoming the parent's presumptively superior right to custody." Id. at 227.

Therefore, when Grandparents attempted to relitigate custody of the Children by classifying their subsequent claim as one seeking to establish de facto custody rather than one opposing the termination of a guardianship, the trial court properly held that the threshold issue applicable in both cases, whether Grandparents had overcome the presumption in favor of the natural parents, had already been decided in favor of Mother and Father and that the cause was barred under the doctrine of res judicata.

7

**Conclusion**

For all of these reasons, we conclude that the trial court's dismissal of Grandparents' petition was proper under principles of res judicata.

Affirmed.

NAJAM, J., and BROWN, J., concur.